**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**ANGELA B. RAST**                                                                   **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO.: 1:10-CV-138-SA-DAS**

**RYAN'S RESTAURANT GROUP, INC.
AND RONALD HEIDELBERG**

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment [47] filed by Defendants Ryan's Restaurant Group, Inc. (Ryan's) and Ronald Heidelberg. For the following reasons, the Court grants the motion in part.

**BACKGROUND FACTS**

Ryan's owns and operates a chain of restaurants. Ryan's practice is to employ three salaried managers at each restaurant, although sometimes a particular location may have more salaried managers at a given time. Each restaurant has a General Manager (GM), also called a "Manager 1." The GM reports to an Area Director, who oversees multiple locations. The Area Director in turn reports to a Regional Vice President. Beneath the GM at each restaurant, in descending order of seniority, is a "Manager 2" and a "Manager 3." There is also a manager training position called "Manager 4." In summary, for purposes of this opinion, the relevant Ryan's hierarchy is as follows: Regional Vice President > Area Director > General Manager / Manager 1 > Manager 2 > Manager 3 > Manager 4 > hourly staff.

Plaintiff Angela Rast, a female native of the Philippines, began working at the Corinth, Mississippi Ryan's in October 2006 in the position of Manager 4. In February 2007, Rast was promoted to Manager 3. At this time, Rob Benefield was the GM of the Corinth Ryan's, and Linda

McColluch was Manager 2. Ronald Heidelberg was the Area Director over the restaurant, and Richard Nottingham was the Regional Vice President.

On December 4, 2008, Rast emailed Benefield and Heidelberg a letter of resignation, stating that she wished to spend more time with her family. In the email, Rast also offered to continue working for up to two months to allow a replacement manager to be found. This arrangement was apparently agreeable to Bedenfield and Heidelberg, and Rast continued working for Ryan's in the Manager 3 position. On January 19, 2009, Natalie Mallard was hired as Rast's replacement and placed in training.[1] On February 4, 2009, two months after Rast submitted her resignation, she claims that Benefield told her, "[You're] not going anywhere. [You're] going to stay in management."

Although Rast was aware that Mallard had been hired and was in training, she testified that she thought "the resignation was not valid anymore" because she was still on the schedule for the week after February 4. By May of 2009, the Corinth Ryan's management consisted of Benefield as the GM, McColluch as Manager 2, and Rast and Mallard both acting as Manager 3. According to Rast, in either May or June of 2009, Heidelberg informed her that she could not stay in the Corinth Ryan's as Manager 3. Heidelberg offered her the option of either taking a GM position in Jackson, Tennessee, or remaining at the Corinth Ryan's as an hourly-shift supervisor. According to Rast:

> That's just come out basically when they have this – now there's – how do I say it? When Natalie was in place in Corinth nobody had said nothing about me moving nowhere or going down position until they was just like a pressure – press from the top that we can only keep three managers in the Corinth store. Okay. And when that pressure was on, Rob started talking about why don't you just be a shift supervisor.

---

[1] Heidelberg claims to have told Rast numerous times that she could not withdraw her resignation once a replacement was hired. Rast denies having any such conversation.

Rast declined the Tennessee GM position and was demoted to shift supervisor. On June 18, 2009, Rast filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging race, sex, and national origin discrimination, as well as retaliation. The charge alleges:

> On or about June 16, 2009, I was demoted from Assistant Manager to Shift Supervisor by Respondent (Ronald Heidelberg). I have been employed with Respondent since October 2006.
>
> There was no reason given for my demotion. I have previously informed my area manager (Ronald Heidelberg) that his continuous sexual harassment and racist name calling of me within the worksection was inappropriate.
>
> I believe that I was discriminated against because of my race (Asian), sex (female) and national origin (Filipino) in violation of Title VII of the Civil Rights Act of 1964 as amended.

In September 2009, Benefield resigned as the GM of the Corinth Ryan's. On September 9, 2009, Heidelberg promoted Rast back to the position of Manager 3.[2] McColluch was made the acting or interim GM. According to Heidelberg, McColluch was given three or four months to prove that she was qualified to run the store. According to Rast, McColluch was unable to perform the duties of the GM and Rast actually did all the GM work.[3]

---

[2]The record is unclear, but at some point between September 2009 and January 2010 Mallard was terminated for performance reasons. Heidelberg testified that he promoted Rast after terminating Mallard in September of 2009, while Rast testified that Mallard remained employed with Ryan's until January 17, 2010, during which time they both occupied the position of Manager 3.

[3]Rast testified in her deposition:

Q. . . . So is it your testimony and your assertion that from the time that Mr. Benefield left until the time that Sam got there that you really were doing all of the GM work?
A. Yes.
Q. What did Linda do?
A. Well, Ms. McColluch was appointed as the acting general manager, but so many things in

In the meantime, Ryan's commenced a search for additional GM candidates. Ads seeking candidates for the vacant position were posted on Monster.com and Careerbuilder.com. Heidelberg also conducted "open house" recruiting events in Memphis, Tennessee and Jackson, Tennessee. Rast testified that she applied for the GM position online.

In November or December 2009, during a management meeting in Horn Lake, Mississippi, Rast testified that Richard Nottingham, the Regional Vice President, stated the following:

A. You know, he was praising Corinth that we're doing good, you know, based on numbers. We're looking good. We just need a man in the store. He said that in the meeting. So he really wants a man to lead the Corinth store.
Q. So during this meeting, he just said we need a man in the store. Everything's doing good, we just need a man in the store?
A. Yes.
Q. Anything else in relation to that?
A. No.

In January of 2010, an outside candidate, Saravanan (Sam) Chandrasekar, an Indian male, was hired for the GM position in Corinth. McColluch remained as Manager 2, and Rast remained as Manager 3. On February 17, 2010, Rast filed another charge of discrimination with the EEOC, alleging discrimination on the basis of race and sex as well as retaliation. The charge of discrimination states:

On October 26, 2006, I was hired with the above named employer. I am currently in

---

the store that she just can't do.
Q. Like what?
A. Like doing order inventory.
Q. Okay.
A. Taking care of the back of the house.
Q. All right. Is that your observation or opinion or have you been told that by others?
A. That is the truth.
Q. What do you base it on?
A. Based on Rob's – base on when you watch her when she do stuff.

> the position of Manager 3. On January 14, 2010, I was denied the position of General Manager. A less qualified male, Indian, was placed in the position. I performed the duties of General Manager (without compensation) for four (4) months prior to the new General Manager being placed.
>
> I believe I have been discriminated against because of my sex, female, race, Asian, and in retaliation for filing a previous charge of discrimination . . . .

Rast filed this lawsuit on May 20, 2010, against Ryan's and Ronald Heidelberg, alleging violations of Title VII of the Civil Rights Act of 1964, as well as 42 U.S.C. § 1981. Rast concedes Defendants' motion for summary judgment on all claims except: (a) her claim that she was not promoted to general manager because she filed an EEOC charge, and (b) her claim that she was not promoted to general manager because of her sex (female). Although not specifically addressed by Plaintiff, the Court construes this as conceding any claims against Ronald Heidelberg individually.[4]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[4] See, e.g., Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.").

purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## DISCUSSION

A.    Sex Discrimination

The Court first addresses Rast's claim that Ryan's failed to promote her to the GM position on the basis of her sex. Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both. Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 377 (5th Cir. 2010). If a plaintiff produces direct evidence of discrimination, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 252–53, 109 S.

6

Ct. 1775, 1792, 104 L. Ed. 2d 268 (1989)). If a plaintiff produces only circumstantial evidence of discrimination, the Court will apply the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).

1. Direct Evidence

Rast argues that Nottingham's statement, "We're looking good. We just need a man in the store" is direct evidence of discriminatory animus. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 309 n.6 (5th Cir. 2004) (quoting <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2000)). If an inference is required for evidence to be probative as to a defendant's discriminatory animus in taking the challenged employment action, the evidence is circumstantial, not direct. <u>Sandstad</u>, 309 F.3d at 897-98. Even assuming, as this Court must, that Nottingham made the comments, the remark does not constitute direct evidence. One must presume that Nottingham's somewhat ambiguous statement is evidence of a discriminatory intent, and then infer that Nottingham relied upon this animus when he hired Chandrasekar and failed to promote Rast. This statement is insufficiently direct and unambiguous to establish unlawful discrimination without inferences. <u>See</u> <u>id.</u> (company plan to "identify . . . younger managers . . . for promotion to senior management . . . ultimately replacing senior management" was not direct evidence of age discrimination because it required the inference that senior managers were to be fired to make room for younger trainees, rather than being replaced as they retire, change jobs, or are terminated for performance reasons). Therefore, Rast must rely on the burden shifting analysis set forth in <u>McDonnell Douglas</u>.

2.  Circumstantial Evidence

Under the McDonnell Douglas standard, an employee must first present a prima facie case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of a protected class; (2) that she sought and was qualified for the position; (3) that she was rejected for the position; and (4) a person outside of the protected class was hired for the position. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007) (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001)).[5] The Fifth Circuit has alternatively formulated the fourth element as "the employer continued to seek applicants with the plaintiff's qualifications," Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004) (citing Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 354-55 (5th Cir. 2001)), or "she was otherwise not promoted because of her sex." Rutherford v. Harris Cnty., Tex., 197 F.3d 173, 179 (5th Cir. 1999) (citing Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998)). A prima facie case creates a rebuttable presumption of intentional discrimination. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. Rachid, 376 F.3d at 312. If the

---

[5]Defendants argue that Rast must show she was treated differently than a male employee under the stringent "nearly identical circumstances" test to establish her prima facie case, relying on Mayberry v. Vought Aircraft Co., 55 F.3d 1086 (5th Cir. 1995). Defendants argue that Rast is unable to do this in light of Chandrasekar's purportedly superior qualifications for the GM position. However, Mayberry involved the requirements to establish a prima facie case in the context of a work-rule violation case, wherein "a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly,'" rather than in the context of failure to promote. Id. at 1090. The Fifth Circuit has indicated in dicta that it would be error for a district court to require a plaintiff to establish she was "better qualified" than the employee promoted at the *prima facie case* stage. See Celestine, 266 F.3d at 356.

defendant meets its burden of production, the plaintiff must then offer evidence sufficient to create a genuine issue of material fact that either (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative). Id.[6]

a.    Prima Facie Case

The Court finds that Rast has presented evidence establishing a prima facie case. There is no dispute that Rast is a member of a protected class (female), that she did not receive the promotion, and that a person outside the protected class received the position. However, the Defendants dispute both that Rast ever applied for the position and that she was qualified for the GM position. Rast testified in her deposition that she applied for the position, and the Court must credit her testimony for summary judgment purposes. As to the argument that Rast was not qualified for the position, this argument is belied by the fact that Rast had previously been offered the position of GM at the Jackson, Tennessee Ryan's. Therefore, the Court finds that Rast has produced evidence that she was at least minimally qualified for the position of GM sufficient to establish a prima facie case. See

---

[6]This approach is referred to as the modified McDonnell Douglas approach. Id. At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n.3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327–28 (5th Cir. 2010).

Nichols, 81 F.3d at 41 ("To establish a prima facie case, a plaintiff need only make a very minimal showing.").

b.  Legitimate, Non-Discriminatory Reasons

Ryan's asserts that it failed to promote Rast because she was not nearly as qualified for the position as the candidate that was hired. In his affidavit, Nottingham asserts that Chandrasker had five years of experience as a General Manager at a competitor restaurant. The Court finds this to be a legitimate, non-discriminatory reason for the decision.[7]

c.  Pretext / Mixed-Motives

To satisfy the third prong of the McDonnell Douglas test, the plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves v. Sanders Plumbing Products, Inc, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). Alternatively, a Plaintiff may also defeat summary judgment at this stage by showing that the Defendant's reason, though true, is only one reason for its decision, and the Plaintiff's protected characteristic was also motivating factor for the decision. Rachid, 376 F.3d at 312.

Rast fails to specifically address Ryan's nondiscriminatory reason for its decision (that Chandrasekar possessed superior qualifications). Instead Rast incorrectly asserts: "Defendants have articulated as their reason for not selecting Plaintiff, that Plaintiff was only a supervisor, not a

---

[7]Defendant also asserts that it did not promote Rast because she never applied for the position. However, as discussed above, this Court must credit Rast's testimony that she did so.

manager, when she applied for the general manager position." Rast asserts that this reason was not true, as Rast had been promoted to the Manager 3 position at the time the GM was filled. However, as Ryan's points out, nowhere in its Motion for Summary Judgment or Memorandum Brief does it assert that this was the reason Chandrasekar was hired instead of Rast.[8]

Rast also attempts to establish that she was more qualified for the GM position than Chandrasekar. Rast points to her somewhat conclusory deposition testimony that after Benefield resigned, she—rather than the acting GM, Linda McColluch— was actually perfoming the duties of the GM. Rast further argues that Chandrasekar would have known less about the job, based on the following statement from Heidelberg's deposition:

> Linda was hurt she didn't get the position. And then here come a new guy from the outside coming in. But if we don't feel like we have the talent in-house, then we have to look outside. Now, coming in the door, of course, Ryan's operation, would Angela or Linda know more operational things than he would, yes. But if I'm bringing in a GM I'm looking for a leader so we can train him on Ryan's system, but I needed a leader that's going to move that store.

Rast presents no other evidence regarding her qualifications for the GM position compared to Chandrasekar, who possessed over five years of experience with a competitor restaurant in a position equivalent to an Area Director for Ryan's. For difference in qualifications to be probative of discrimination, Rast must show that she was "clearly better qualified" than Chandrasekar. Moss v. BMC Software, Inc., 610 F.3d 917, 922-23 (5th Cir. 2010). "The bar is set high for this kind of evidence." Id. To raise a fact question as to whether discrimination was a factor in Ryan's hiring

---

[8]However, in Heidelberg's deposition, the following exchange occurred:
Q. Did you consider Ms. Rast for that position [GM]?
A. No.
Q. Why not?
A. Because at the time she was [a] supervisor, so a supervisor, we wouldn't have looked at her as the GM for that position because she was a supervisor.

decisions, Rast must "present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. (quoting Deines v. Texas Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)). Rast has failed to make such a showing, and this argument is unavailing.

Rast next argues that evidence of pretext is found "in the fact that Defendant Ryan's own personnel policies preferred internal applicants; yet Defendants hired an outside male applicant, who would know less about the job than did Plaintiff and the other female manager." However, the personnel "policy" that Rast accuses Ryan's of not following is actually a statement contained in an ad for the Corinth GM position which was posted on Monster.com and CareerBuilder.com. The ad—obviously posted to solicit outside candidates for the job— states, "By promoting from within, Ryans rewards cooperation, initiative, leadership and commitment among team members, and builds positive morale and loyalty. Ryans features performance based promotions as well as dynamic growth plans, which provide plenty of opportunity to develop your skills." Rast's argument that Ryan's violated this "policy" by hiring an outside candidate for the GM position and that this somehow evinces pretext is not well taken.

Finally, Rast argues that Nottingham's statement about the need to get a man in the store evinces a discriminatory intent. Ryan's fails to respond to this argument except for a general assertion that "such a remark falls well short of establishing sex discrimination" and asks the Court to disregard Rast's testimony as not credible, which is, of course, improper at the summary judgment stage. See Vance v. Union Planters Corp., 209 F.3d 438, 442 (5th Cir. 2000) ("Even if [Plaintiff] were the only witness to testify about the statements at issue . . . that would not warrant taking the

12

case out of the jury's hands.").

The Fifth Circuit has stated, "Comments are evidence of discrimination only if they are (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue." Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010); Jenkins v. Methodist Hospitals of Dallas, Inc., 478 F.3d 255, 262-63 (5th Cir. 2007) (citing Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 343-44 (5th Cir. 2002)). Comments which do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment. Jackson, 602 F.3d at 380.

Viewing Nottingham's alleged statement in the light most favorable to Rast, the remark is appropriate circumstantial evidence of discriminatory animus. The statement related to sex and was proximate in time to the complained-of adverse employment action, having allegedly been made a month or two before Chandrasekar was hired. Nottingham acknowledged in his affidavit that he participated in the decision to hire Chandrasekar. Finally, a juror could reasonably infer that the statement expressed a desire to hire a male for the vacant GM position. Whether this remark was actually made and what inferences should be drawn therefrom depend on credibility determinations which this Court cannot resolve at the summary judgment stage. Therefore, issues of material fact exist for trial and summary judgment is denied as to Rast's sex discrimination claim.[9]

---

[9]The Court need not decide at this juncture whether this case is properly a "pretext" case or a "mixed motives" case. See Smith, 602 F.3d at 333.

B.  Retaliation

Rast also argues that she was denied the promotion to GM in retaliation for filing the June 18, 2009 EEOC complaint. The McDonnell Douglas test is applicable to Title VII unlawful retaliation cases. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a) by showing that: (1) she engaged in an activity protected by Title VII;[10] (2) she was subjected to an adverse employment action; (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, plaintiff must then offer evidence that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). See Rachid, 376 F.3d at 312; Smith, 602 F.3d at 330-33.

Here, although Rast has presented evidence that she engaged in a protected activity and was subject to an adverse employment action, she has failed to present any evidence establishing a causal link between the two, and consequently, has failed to establish a prima facie case of retaliation.

---

[10] An employee has engaged in protected activity if he or she has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. Grimes v. Tex. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996).

14

Therefore, summary judgment is appropriate as to this claim.

To establish a 'causal link' as required by the third prong of the prima facie case, a plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. McCoy v. City of Shreveport, 492 F.3d 551, 562, n.28 (5th Cir. 2007); Swanson v. Gen. Srvs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). However, if the only evidence of a prima facie causal link is "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," then "the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (citations and internal quotation marks omitted) (citing with approval cases holding that three and four-month gaps between an employer's knowledge of a protected activity and an adverse employment action are too long, standing alone, to establish a prima facie causal link). The test at the prima facie stage may not be particularly stringent, but the plaintiff nonetheless "must produce some evidence of a causal link." Ackel v. Nat'l Commc'n, Inc., 339 F.3d 376, 385 (5th Cir. 2003).

Rast argues that causation can be established by the temporal proximity between her EEOC charge and Ryan's failure to promote her. However, approximately six months elapsed between Rast's filing of her June 18, 2009 EEOC charge and Ryan's failure to promote her. This renders the adverse employment decision too remote in time from the protected activity to establish an inference of causation. See, e.g., Rasco v. Potter, 265 F. App'x 279, 283 (5th Cir. 2008) (four month time lapse insufficient to infer causation based on temporal proximity).

Rast next argues that Heidelberg's deposition testimony would permit a jury to infer that he regarded Plaintiff's EEOC charge as a negative factor. In his deposition, Heidelberg stated:

> Q. Okay. Now, after she was moved down to the supervisor position give me your evaluation of her work performance at the supervisor level.
> A. Well, her performance-wise, I mean, like as far as doing her duties was fine.
> Q. You said – you qualified that answer and said performance wise?
> A. Well, once the – even up to this point, once she filed her charges her personal attitude has changed.
> Q. Tell me how so.
> A. Well, see, very negative. Not willing to help the team out, the management team, but the management team helps her out when she has a personal situation and have to change their schedule. But if we need her to work an extra day or to change her schedule she's very combative about that.

While this Court must view the evidence in the light most favorable to the non-moving party and allow all reasonable inferences therefrom, this argument requires the Court to pile inference upon inference such that it crosses into speculation. A juror would have to infer that Heidelberg's perception of Rast's attitude changed because she filed an EEOC charge, and from that, infer that six months later he failed to promote Rast to the GM position because she filed the charge, despite promoting her from shift supervisor to the position of Manager 3 in the interim. The above testimony fails to establish a causal link between the protected activity (filing the EEOC charge) and the adverse employment action (failure to promote Rast to GM). To defeat summary judgment, there must be more than a mere scintilla of evidence in record of a retaliatory motive on the part of the Defendant.

Even assuming arguendo that Rast could establish a prima facie case, she has failed to present evidence from which a reasonable juror could conclude that Ryan's non-discriminatory reason for failing to promote her is a pretext for retaliation, or that retaliation was a motivating factor in the decision. As stated above, Ryan's has articulated a legitimate, non-retaliatory reason for failing to

promote Rast, that Chandreseker was more qualified for the position. Therefore, the burden shifts back to Rast to offer evidence which would allow a reasonable jury to conclude that Ryan's stated reason is either a pretext for retaliation, or that retaliation was a motivating factor for the decision.

Rast's only additional evidence on this point is a conclusory assertion that she was better qualified than Chandrasekar. As discussed above, Rast has failed to produce evidence that she was "clearly better qualified" than Chandrasekar, and this argument lacks merit. As Rast has failed to raise a genuine issue of material fact, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is granted.

## CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED except as to Plaintiff's claim that she was not promoted to GM on the basis of her sex.

SO ORDERED on this, the 23rd day of September, 2011.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**